UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DEUTSCHE TELEKOM AG, )
)
    Plaintiff, )
)
v. ) Civil Case No. 21-1070 (RJL)
)
REPUBLIC OF INDIA, )
)
    Defendant. )

## MEMORANDUM OPINION
March 27, 2024 [Dkt. #11]

Petitioner Deutsche Telekom AG ("DT"), a German company, won an arbitration award against the Republic of India and then petitioned this Court to confirm the award. In opposition, India insists the petition must be dismissed on *forum non conveniens* and because India is immune from suit under the Foreign Sovereign Immunities Act ("FSIA"). These arguments fail, however, chiefly because India ignores our Circuit's precedent that all but preordains the outcome here. Accordingly, I will **DENY** India's motion and **CONFIRM** the arbitral award.

## BACKGROUND

In 1995, Germany and India signed a bilateral investment treaty ("BIT") providing protections for German companies that invest in India and vice-versa. Article 9(2) of the BIT supplies that, in the event of a dispute between sovereign and investor, "either party may refer such dispute to arbitration in accordance with the United Nations Commission on International Trade Law Rules on Arbitration, 1976" ("UNCITRAL Rules"). *See* Boykin Decl., Ex. B [Dkt. #1-5] (copy of the Agreement between the Federal Republic of

Germany and the Republic of India for the Promotion and Protection of Investments (July 10, 1995)).

The underlying dispute here stems from a 2005 agreement between Indian company Devas Multimedia Private Limited ("Devas") and Antrix Corporation ("Antrix"), an Indian state-owned enterprise. *See* Pet. Recognize & Confirm Foreign Arbitral Award [Dkt. #1]. The agreement provided that Antrix would lease to Devas 70 MHz of electromagnetic spectrum on two satellites that were to be manufactured and launched by India's space organization. *Id.* ¶ 16. Devas would then use the leased spectrum to supply broadband wireless and audiovisual services throughout the country. *Id.* The Devas-Antrix agreement did not "officially enter[] into force" until February 2006, when Antrix informed Devas that it had received all the internal government approvals needed for the lease. *Id.* Two years later, DT, through a Singaporean subsidiary, agreed to invest in Devas, ultimately furnishing almost $100 million in exchange for roughly 20% of Devas's shares. *Id.* ¶ 17.

Yet in February 2011, India, through the state-owned Antrix, terminated the Devas-Antrix agreement, invoking the *force majeure* clause and concluding that India's national security needs required the government to preserve for itself the spectrum it had leased to Devas. *Id.* ¶ 24. Devas contested Antrix's termination as unlawful, observing that Antrix "could not rely on a self-induced *force majeure*." *Id.* ¶ 26 (quoting Boykin Decl. Ex. D [Dkt. #1-7]). When Antrix refused to reinstate the contract, DT notified India of the existence of an investment dispute within the meaning of the BIT and, in September 2013, submitted a notice of arbitration accepting India's standing offer to arbitrate under Article 9(2). *Id.* ¶¶ 28–29 (citing Boykin Decl., Ex. C [Dkt. #1-6] (Notice of Arbitration)).

Before the arbitral panel, which sat in Switzerland, India raised two preliminary objections to the panel's jurisdiction, among other contentions. *See* Boykin Decl., Ex. D [Dkt. # 1-7] (Interim Award). It first argued that DT's request for arbitration fell outside of India's offer to arbitrate because DT was not a qualifying "investor" with a qualifying "investment" for purposes of the BIT. *Id.* ¶¶ 158–165. Second, India claimed that it agreed to arbitrate only with direct investors, not indirect investors like DT, whose only connection with Devas was through its Singaporean subsidiary. *Id.* ¶¶ 121–130. The arbitral panel rejected these arguments, concluding on the merits that India had violated its obligations under the BIT. The panel then issued an interim award in DT's favor.

Unhappy with this outcome, India applied to the Swiss Federal Supreme Court to set aside the interim award. In that court, which has primary jurisdiction over challenges to Swiss-seated arbitrations, India asserted the same two preliminary objections raised before the arbitral panel, as well as a slew of merits contentions. Rejecting all of these arguments in a 59-page, single-spaced decision, the Swiss Federal Supreme Court declined to annul the interim award. *See* Boykin Decl., Ex. E [Dkt. #1-8] (Swiss Court Decision). On India's jurisdictional arguments, specifically, the court confirmed India's agreement to arbitrate this investment dispute, finding that DT's activities in India through its subsidiary fit comfortably within the definition of an "investment" under the BIT. *Id.* at 13–18.

While India's challenge to the interim award was pending, the arbitral panel issued DT a final award of $93.3 million, plus costs and interest. *See* Boykin Decl., Ex. F [Dkt. #1-9] (Final Award). India did not initially contest the final award in the Swiss courts, so DT commenced an action in this Court seeking to confirm the award. After the parties

3

briefed India's motion to dismiss, however, the Court stayed these proceedings on India's request while it pursued another challenge to the award in the Swiss Federal Supreme Court, supposedly based on new facts and evidence. In April 2023, DT informed the Court that the Swiss Federal Supreme Court had again upheld the arbitral panel's award and that its decision was "final and binding and not subject to any further appeal." Notice [Dkt. #28] at 1. After seeking further input from the parties, the Court lifted the stay in December 2023. India's motion to dismiss is now ripe for decision. *See* P&A in Supp. India's Mot. Dismiss [Dkt. #11-1] ("Mot."); Pet'r's P&A in Opp'n Mot. Dismiss [Dkt. #14]; Reply in Supp. Mot. Dismiss [Dkt. #17] ("Reply").

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the petitioner "bears the burden of invoking the court's subject matter jurisdiction." *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015). In cases, like this one, involving a foreign state, "the FSIA is the sole basis for obtaining jurisdiction … in our courts." *Argentine Republic v. Hess Shipping Corp.*, 488 U.S. 428, 434 (1989). Thus, "[a]t the threshold of every action in a District Court against a foreign state," the court must evaluate whether the FSIA grants the foreign state immunity from the jurisdiction of U.S. courts or, instead, whether one of the FSIA's exceptions to immunity applies. *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 493–494 (1983); *see also* 28 U.S.C. §§ 1605, 1607. If the court is satisfied that one of the specified exceptions applies, it will have subject matter jurisdiction over the suit.

Similarly, "dismissal under the doctrine of *forum non conveniens* is a non-merits threshold inquiry." *Gretton Ltd. v. Republic of Uzbekistan*, 2019 WL 3430669, at *2

4

(D.D.C. July 30, 2019). Because it does not require assuming a substantive law-declaring power, a district court may "address a *forum non conveniens* claim before affirming its jurisdiction." *Tatneft v. Ukraine*, 21 F.4th 829, 840 (D.C. Cir. 2021).

## DISCUSSION

India makes two arguments at this threshold stage for why DT's petition must be dismissed. Its first argument, based on the doctrine of *forum non conveniens*, can be dispatched with alacrity. Our Circuit has "squarely held 'that *forum non conveniens* is not available in proceedings to confirm a foreign arbitral award because only U.S. courts can attach foreign commercial assets found within the United States.'" *Tatneft*, 21 F.4th at 840 (quoting *LLC SPC Stileks v. Republic of Moldova*, 985 F.3d 871, 876 n.1 (D.C. Cir. 2021)). This holds true even if the parties purported to agree to a different forum selection, which, at any rate, is an assumption fairly disputed by DT here. *Cf. Pezold v. Republic of Zimbabwe*, 2023 WL 5547912, at *4 (D.D.C. Aug. 9, 2023) (rejecting *forum non conveniens* claim because it not only "rests on the mistaken reading of the BITs as forum-selection clauses," but also "is 'squarely foreclosed by Circuit precedent'" (quoting *BCB Holdings Ltd. v. Gov't of Belize*, 650 Fed. App. 17, 19 (D.C. Cir. 2005) (brackets omitted)). India's appeals to the BIT's choice-of-law provisions are therefore no help in surmounting this "formidable precedent," *Gretton*, 2019 WL 3430669, at *6, and its request for a *forum non conveniens* dismissal must be declined.

India's second argument for dismissal, in which it claims immunity under the FSIA, fares no better, though it requires a more sustained discussion. The FSIA generally grants foreign governments immunity from the jurisdiction of American courts. 28 U.S.C. §

1604. But there are exceptions to this rule, which, if established, each furnish a "basis for obtaining jurisdiction over a foreign state in our courts," *Stileks*, 985 F.3d at 877 (internal quotation marks omitted). DT invokes two of the exceptions here, though this Court need address only one: the so-called "arbitration exception," which provides for federal court jurisdiction in any action brought

> to enforce an [arbitration] agreement made by the foreign state ... or to confirm an award made pursuant to such an agreement to arbitrate, if ... the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards.

28 U.S.C. § 1605(a)(6). Distilled, the arbitration exception requires establishing three "jurisdictional facts": "the existence of an arbitration agreement, an arbitration award[,] and a treaty governing the award." *Stileks*, 985 F.3d at 877. The petitioner bears the burden of producing evidence to support these facts, while the sovereign, in rebuttal, "must establish the absence of the factual basis by a preponderance of the evidence." *Chevron Corp. v. Ecuador*, 795 F.3d 200, 204 (D.C. Cir. 2015) (internal quotation marks omitted).

DT has met its burden of production. It has supplied copies of the BIT (containing the arbitration offer in Article 9(2)), DT's notice of arbitration against India, and the arbitral panel's decision. These documents are regularly said to demonstrate an arbitration agreement between the parties, *Stileks*, 985 F.3d at 877; *Chevron*, 795 F.3d at 205, and India does not challenge their authenticity. Nor is there any doubt that the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention"), ratified by Switzerland and the United States and incorporated into the Federal Arbitration Act, governs the award in this case. *See Creighton Ltd. v. Gov't of State of Qatar*, 181

F.3d 118, 123 (D.C. Cir. 1999); *Global Distressed Alpha Fund I LP v. Red Sea Flour Mills Co.*, 725 F. Supp. 2d 198, 203 (D.D.C. 2010); *see also* 9 U.S.C. §§ 201–208.

Nevertheless, India attempts to rebut these jurisdictional facts by arguing that its offer to arbitrate in Article 9(2) of the BIT did not encompass DT's claims—first because "DT had not made any 'investment' in India and was not an 'investor' as defined in the BIT," and second because DT's activities through a subsidiary were not protected by the BIT. Mot. 26. As a result, or so India concludes, it formed no agreement to arbitrate DT's dispute and thus the award issued by the arbitral panel was not "made pursuant to such an agreement to arbitrate." 28 U.S.C. § 1605(a)(6). But arguments, like these, about whether a sovereign's offer to arbitrate covers "this particular dispute" concern "the arbitrability of a dispute[, which] is not a jurisdictional question under the FSIA." *Stileks*, 985 F.3d at 878. Instead, arbitrability arguments are "properly considered as part of [merits] review under the New York Convention," which provides for the nonrecognition of an award if, among other reasons, it falls outside the scope of an arbitration agreement. *Chevron*, 795 F.3d at 206; *see* N.Y. Convention, art. V(1)(c). Like many sovereigns before it, India incorrectly "conflates the jurisdictional standard of the FSIA with the standard for review under the New York Convention." *Stileks*, 985 F.3d at 878 (quoting *Chevron*, 795 F.3d at 205). The arbitration exception therefore applies, and India is not entitled to immunity on these grounds.

As far as the FSIA is concerned, that ends the Court's inquiry. India's arbitrability arguments are no response to DT's evidence of an arbitration agreement, so India is not immune from suit in our courts. But for the sake of putting them to bed, I will "construe

7

[India's] arbitrability argument[s] as a defense" under the New York Convention, *Stileks*, 985 F.3d at 878, and so construing, reject them once more. The arbitral panel already found that an arbitration agreement existed in this case, and the Court has "no power" to second-guess that finding where the parties assigned arbitrability determinations to the arbitrator, as they did here. *Id.* (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019)). Indeed, in Article 9(2) of the BIT, India (and Germany) expressly agreed to arbitrate "in accordance with" the UNCITRAL Rules, which in turn delegate to the arbitrator "the power to rule on its own jurisdiction." UNCITRAL Rules, art. 23, ¶ 23 (rev. 2010 ed.). As two panels of our Circuit Court have consequently held, adoption of these Rules constitutes "clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Stileks*, 985 F.3d at 878–879 (quoting *Chevron*, 795 F.3d at 208); *see Hulley Enters. Ltd. v. Russian Fed'n*, 2023 WL 8005099, at *15 (D.D.C. Nov. 17, 2023) ("[A]n agreement … under the UNCITRAL Rules requires an enforcing court to respect the parties' contract to arbitrate under those rules and defer to the jurisdictional determinations of the tribunal."); *see also Balkan Energy Ltd. v. Republic of Ghana*, 302 F. Sup. 3d 144, 158 (D.D.C. 2018). While India purports to offer extra-contractual evidence that the parties never intended this outcome, none of India's extrinsic material—"[e]ven assuming it would be proper to consider," *Rusoro Mining Ltd. v. Bolivarian Republic of Venezuela*, 300 F. Supp. 3d 137, 147 (D.D.C. 2018)—is sufficient to overcome the clear and unmistakable evidence found in the BIT's incorporation of the UNCITRAL Rules here. Thus, the Court "must accept the arbitral tribunal's determination" that India agreed to arbitrate DT's dispute and delve no deeper into India's arbitrability arguments. *Stileks*, 985 F.3d at 879.

\*   \*   \*

One last quarrel between the parties remains for this Court to address. Despite extensive briefing in this matter so far, India has purported to reserve its merits defenses under the New York Convention for a later stage. It argues that our Circuit has established a "two-phased analysis framework" for confirmation proceedings like this one, Reply 10, according to which a court must resolve a sovereign's "colorable" immunity assertion "before the sovereign can be compelled to defend the merits," *Process & Indus. Devs. Ltd. v. Fed. Republic of Nigeria*, 962 F.3d 576, 585 (D.C. Cir. 2020). Now that this Court has indeed resolved (and rejected) India's threshold immunity claim, India maintains it is entitled to another round of briefing to assert defenses afforded to it by Article V of the Convention. Please! These defenses "may potentially include, but are not limited to," the same arbitrability arguments that it has already raised before the arbitral panel, the Swiss Federal Supreme Court, and this Court, as well as two other contentions: that DT's "claims were barred from arbitration under the [BIT]'s 'essential security' clause, and that [DT's] claims are precluded because the underlying 2005 contract is invalid due to fraud and collusion." Mot. 1–2. For its part, DT asks the Court to reject India's defenses without additional briefing, since India had no right to reserve them and they are meritless in any event.

I agree with DT. In the final analysis, confirmation proceedings must be "summary in nature." *Argentine Republic v. Nat'l Grid Plc*, 637 F.3d 365, 369 (D.C. Cir. 2011). And where, as here, the sovereign had ample opportunity to assert its merits defenses, it cannot demand another bite at the apple. *See id.*; *Process & Indus. Devs.*, 962 F.3d at 585

9

(allowing separate briefing of immunity and merits issues only if immunity assertion is "colorable," which India's is not). This is especially true in India's case, given that at least some of the merits arguments for which it seeks additional briefing have already been litigated before this Court. *Cf. Nextera Energy Global Holdings B.V. v. Kingdom of Spain*, 656 F. Supp. 3d 201, 222 (D.D.C. 2023) (explaining that if a sovereign "assert[s] at least some merits as well as jurisdictional defenses" in a single motion to dismiss, the sovereign forfeits other merits defenses by not raising them in that motion); *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 2021 WL 129803, at *10 (D. Del. Jan. 14, 2021) (similar). In short, India is not entitled to another opportunity to develop its Article V defenses, and the arbitral award in DT's favor "shall" be confirmed. 9 U.S.C. § 207. Enough is enough!

## CONCLUSION

For the foregoing reasons, India's motion to dismiss [Dkt. #11] is **DENIED** and the arbitral award is **CONFIRMED**. An order consistent with this Memorandum Opinion will issue on this date.

RICHARD J. LEON
United States District Judge